1246 West Chester Pike, Suite 312
West Chester, PA 19382
Office: (610) 701-0222
Fax: (610) 431-2792
lohrandassociates.com

**LOHR & ASSOCIATES, LTD.**
ATTORNEYS-AT-LAW

ROBERT J. LOHR II *+                                                    *ADMITTED IN PA
Writer's E-mail Address: bob@lohrandassociates.com                      +ADMITTED IN NJ

March 9, 2021

<u>Via Electronic Filing</u>

The Honorable Magdeline D. Coleman
Chief Bankruptcy Judge
United States Bankruptcy Court for the Eastern District of Pennsylvania
Robert N.C. Nix Sr. Federal Courthouse
900 Market Street, Suite 202
Philadelphia, PA 19107

   **Re: In re: David F. Curtiss, Chapter 13 Bankruptcy Case #20-11587-mdc**
     **<u>Objection to Proof of Claim #8 Filed by R. Kerry Kalmbach</u>**

Dear Judge Coleman:

   I respectfully submit this letter brief in response to the Court's direction to me to address
the question of whether relief from the automatic stay is/was required to acknowledge the Order
Striking the Judgment against the Debtor held by R. Kerry Kalmbach entered by the Chester
County Court of Common Pleas on December 28, 2020 (see attached). At the outset, I feel
compelled to inform the Court that the Debtor deceased on February 19, 2020. A Suggestion of
Death has been filed at docket number 51, and I am in the process of working on retention by the
Estate of the Debtor.

**Background**

   On November 19, 2018, R. Kerry Kalmbach ("Kalmbach") filed a complaint against
David F. Curtiss (the "Debtor"), thereby commencing the case styled as *R. Kerry Kalmbach v.
David F. Curtiss*, Chester County Court of Common Pleas, Case Number 2018-12030-CT.
Although Kalmbach never effectuated proper service on the Debtor, a judgment by default was
entered against the Debtor on January 31, 2019, in the amount of $113,814.80. On March 13,
2020, the Debtor filed the above-referenced chapter 13 bankruptcy case. On November 4, 2020,
the Debtor filed a Petition to Strike Default Judgment in the Chester County Court of Common
Pleas. On December 2, 2020, Kalmbach filed his Answer to Debtor's Petition to Strike Default
Judgment. On December 28, 2020, the Honorable Mark L. Tunnell executed an Order setting
forth in pertinent part: ". . . it is hereby ORDERED and DECREED that the Petition is
GRANTED and the default judgment entered on January 31, 2019, is STRICKEN." On January

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 2*

---

6, 2021, the Debtor filed his Objection to Proof of Claim #8.  On February 23, 2021, counsel for the Debtor and Kalmbach appeared before Your Honor and presented argument for and against Debtor's Objection to Proof of Claim #8.

## Question From the Court

Was Relief from the Automatic Stay Required to Permit the Debtor to file his Petition to Strike the Default Judgment and Kalmbach to His Answer in the Chester County Court of Common Pleas?

## Answer

Yes.

## Argument

It is axiomatic that 11 U.S.C. § 362 stays proceedings against the debtor, however, the question before the Court is what effect does the automatic have with regard to a debtor who wishes to pursue an appeal, some act against a creditor, or, in this case, prosecuting a petition to strike a default judgment?  The controlling law in the Third Circuit is found in *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d Cir. 1982).  In *St. Croix* the plaintiff initiated a civil action against the defendant for past due rent, water charges and possession of a leased premises, and the defendant filed a counterclaim.  *Id.* at 447.  The Territorial Court found in favor of the plaintiff awarding damages and also found in favor of the defendant awarding damages.  *Id.*  Both sides appealed.  *Id.*  The District Court remanded and both parties appealed to the Third Circuit.  *Id.*  Prior to briefing the Third Circuit, the defendant in the underlying matter filed for bankruptcy protection under chapter 11 of the Bankruptcy Code.  *Id.*  The Third Circuit questioned whether relief from the automatic stay was required prior to hearing the appeals.  *Id.* at 448.  The *St. Croix* Court held:

> In our view, section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 3*

---

Under this test, the instant appeals, since they arise out of an eviction proceeding brought against the debtor Hotel, are subject to the automatic stay imposed by section 362. Since the Bankruptcy Court has not entered an order granting relief from the stay, we hold that section 362 prevents us from proceeding with this appeal. *Id.* at 449.

I realize that there is not an appeal before this Honorable Court, however, the same legal standard has been applied in the United States Bankruptcy Court for the Eastern District of Pennsylvania in *In re Bennett*, 528 B.R. 273 (Bankr. E.D. Pa. 2015). In *Bennett* the debtor objected to the City of Philadelphia's claims for unpaid water and sewer bills. *Id.* at 273. After filing his objection, but before the City's determination on the debtor's objection, the debtor filed for bankruptcy protection under chapter 7 of the Bankruptcy Code, and then converted to chapter 13. In his analysis, the Honorable Eric L. Frank, applying the law of *St. Croix*, held that the answer to whether relief is required hinged upon which party was in an offensive posture when the proceedings between the parties began. *Id.* at 278. The following provides an explanation of Judge Frank's reasoning in *Bennett*:

> For more than thirty (30) years, the controlling precedent in this Circuit on the meaning of the term "against the debtor" in §362(a)(1) has been *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 19 V.I. 641 (3d Cir. 1982). In *St. Croix Condominium*, the Court of Appeals held that the applicability of the automatic stay to a pre-petition lawsuit is determined by evaluating the nature of the action at its "inception" and that, for purposes of §362(a)(1), the nature of the proceeding does "not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs." 682 F.2d at 449. Further, the automatic stay "stay[s] all appeals in proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee." Id. (emphasis in original). Stated slightly differently, the question is: which party was in an "offensive posture" when the proceedings between the parties began?

> I conclude that the dispute between the Debtor and the City commenced with the City in the offensive posture. The proceedings began when a City agency (the Water Revenue Bureau) issued a bill — a formal demand for payment for water and sewer service provided to the Debtor's property. The issuance of that bill was an administrative act to collect a debt, with the City in an offensive posture. The Debtor's petition for review was nothing more than a defensive response to the City's demand for payment. In the petition for review, the Debtor sought only a

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 4*

---

modification of the City's liability determination in the form of a reduction of his bill. *Id.*[1]

Just as the City of Philadelphia was in the "offensive posture" at the inception of the matter with the debtor, Kalmbach was in the "offensive posture" against the Debtor in the case at bar. The City of Philadelphia sent the debtor a bill, establishing its "offensive posture", just as Kalmbach sued the debtor thereby establishing his "offensive posture". The debtor in *Bennett* filed a "petition" seeking a modification of the City's liability determination [*Id.*] and the Debtor in the case at bar filed a "petition" seeking to have a judgment stricken.

Accordingly, as established by both *St. Croix* and *Bennett*, stay relief was required by the Debtor in his pursuit of striking the judgment held by Kalmbach. Section 362(d) of the Bankruptcy Code provides the statutory basis for relief from the automatic stay. The issue now becomes how best to effectuate the annulment of the stay to provide full credence to the Order Striking the Judgment held by Kalmbach. Fortunately, the Bankruptcy Code permits courts to retroactively grant relief from the stay.[2]

---

[1] The issue in *Bennett* differs from the case at bar in that the City of Philadelphia made an unfavorable  determination on the debtor's petition one day after the debtor filed his bankruptcy case which Judge Frank held was entered in violation of the automatic stay. This permitted the debtor to file an objection to the proof of claim, and the City argued *res judicata* arguing that a determination had already been reached. *Bennett* at 279.

[2] 11 U.S.C. § 362(d) sets forth: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1)for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2)with respect to a stay of an act against property under subsection (a) of this section, if—
    (A)the debtor does not have an equity in such property; and
    (B)such property is not necessary to an effective reorganization;
(3)with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 5*

---

In the case *In re Siciliano*, 13 F.3d 748 (3d Cir. 1994), the debtor filed a chapter 13 bankruptcy petition three days prior to the sheriff sale of his property, but failed to notice either the sheriff or the foreclosing mortgagee [Prudential]. *Id* at 750. The sheriff sale of the debtor's property was held and the property was sold to the mortgagee. *Id.* Subsequently the chapter 13 Trustee filed a motion to dismiss the debtor's bankruptcy case which was granted. *Id.* The mortgagee filed a motion for retroactive relief from the stay, but the debtor's bankruptcy case was dismissed prior to the hearing for failure to file required documents, and the motion for relief was dismissed as moot. *Id.* The debtor then filed a motion to file a chapter 7 case, which the Bankruptcy Court considered as a motion to reconsider the dismissal of his chapter 13 case. *Id.*

---

(A)the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B)the debtor has commenced monthly payments that—

(i)may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii)are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

(4)with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A)transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B)multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording."

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 6*

_____

The Bankruptcy Court then entered an order voiding the sale of the debtor's property. *Id.* The mortgagee then filed a motion for reconsideration of its motion for retroactive relief from the stay, which the Bankruptcy Court denied. *Id.* The District Court affirmed the Bankruptcy Court's order. The mortgagee then appealed to the Third Circuit. The Third Circuit remanded the case back to the Bankruptcy Court holding:

> We agree with Prudential's contention that the inclusion of the word "annulling" in the statute, indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio. As the Fifth Circuit has acknowledged, "the power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay." *Sikes v. Global Marine, Inc.* , 881 F.2d 176, 178 (5th Cir. 1989). See also *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992) (observing that "section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay"). We note that, if such relief did not apply retroactively, then "its inclusion next to 'terminating' would be superfluous." *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). *See also* 2 Collier's Bankruptcy Manual P 362.06 (3d ed. 1983) (stating that an order "annulling the stay could operate retroactively to the date of the filing the petition which gave rise to the stay; . . . [while] an order terminating the stay would be operative only from the date of its entry").

> Accordingly, we conclude that the bankruptcy court erred when it dismissed Prudential's motion for relief from the November 17, 1991, automatic stay as void, not voidable. Pursuant to section 362(d), the bankruptcy court had authority to grant an annulment of the stay. If it had done so, the post-petition sheriff's sale would have been validated as an exception to the void ab initio rule. *Id.* at 751.

The recent decision by the United States Supreme Court in *Roman Catholic Archdiocese of San Juan v. Feliciano (In re Acevedo)*, 140 S. Ct. 696 (2020), must be taken into consideration in any retroactive application of annulling the automatic stay.

In *Acevedo*, the Supreme Court recognized that federal courts may issue *nunc pro tunc* orders to reflect the reality of what has already occurred. Id. at 701 (citing *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990). "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Acevedo*, 140 S. Ct. at 701. (quoting *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390, 32 S. Ct. 277, 56 L. Ed.

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 7*

476 (1912). Orders that are entered nunc pro tunc:

> . . . are not some Orwellian vehicle for revisionist history—
> creating facts that never occurred in fact. *United States v. Gillespie*,
> 666 F.Supp. 1137, 1139 (N.D. Ill. 1987). Put plainly, the court
> cannot make the record what it is not. *Jenkins*, 495 U.S. at 49,
> 110 S.Ct. 1651. *Acevedo*, 140 S.Ct. at 701 (quotation marks
> omitted).

*Laurel Valley Dev., LLC v. Parker (In re Parker)*, 624 B.R. 222 (Bankr. W.D. Pa. 2021).

While *Acevedo* largely stands for the proposition that *nunc pro tunc* orders granting relief from the stay are disallowed, however, at the same time, the *Acevedo* Court recognized that a court may issue *nunc pro tunc* orders to "reflect the reality of what has already occurred." *Acevedo* at 701. This is exactly what the Debtor is seeking in the case at bar. The Debtor will be asking via a motion for relief for this Honorable Court to enter an order reflecting the reality of the underlying circumstances behind the civil action taken by Kalmbach against the Debtor in the Chester County Court of Common Pleas. Kalmbach received a default judgment against the Debtor without ever effectuating proper service. A true and correct copy of the Memorandum of Law in Support of Defendant David F. Curtiss's Verified Petition to Strike Default Judgment is attached hereto. The gist of the Petition to Strike is that Kalmbach never effectuated proper service on the Debtor and accordingly, the Court of Common Pleas lacked jurisdiction over Curtiss. Indeed, the Court agreed as reflected in its Order wherein the Court held "the Petition is GRANTED and the default judgment entered on January 31, 2019 is STRICKEN".

**Conclusion**

The default judgment entered against the Debtor was premised upon improper service and ultimately the Chester County Court of Common Pleas acknowledged its lack of personal jurisdiction over the Debtor entering an order striking the judgment. The Debtor was unaware that relief from the automatic stay was required prior to filing his Petition to Strike the Default Judgment. The Debtor's estate will pursue retroactive application of relief from the automatic stay seeking an Order from this Honorable Court annulling the stay with regard to the Debtor's Petition, Kalmbach's answer and the court's order.

**\*\*\*\* SIGNATURE PAGE FOLLOWS \*\*\*\***

*The Honorable Magdeline D. Coleman*
*March 9, 2021*
*Page 8*

_____

Respectfully submitted,


_____/s/ Robert J. Lohr II_____


RJL/ns
attachments

cc:    R. Kerry Kalmbach, Esquire
       United States Trustee
       William C. Miller, Esquire

C:\Program Files (x86)\neevia.com\docConverterPro\temp\NVDC\AE63B6BA-D98F-46BC-BFD2-8283CFA1EF13\c314da45-969f-325b-a41e-149a2afe06dd.docx

R. KERRY KALMBACH                                : IN THE COURT OF

                                                 : CHESTER COUNTY

        vs.

                                                 : CIVIL ACTION – LAW

DAVID F. CURITSS                                 : NO. 2018-12030-CT

Plaintiff, *Pro se.*
David B. Smith, Esquire and Michael P. Donohue, Esquire, Attorneys for Defendant.

O R D E R

          AND NOW, this _____ day of _____, 20__, upon

consideration of Defendant's Petition to Strike Default Judgment and Plaintiff's response thereto,

it is hereby ORDERED and DECREED that the Petition is GRANTED and the default judgment

entered on January 31, 2019 is STRICKEN.[1]

BY THE COURT:

_____

MARK L. TUNNELL            J.

---

[1] A petition to strike a default judgment will be granted where there is a fatal defect apparent from the face of the record. State Farm Insurance Co. v. Barton, 905 A.2d 993 (Pa Super. 2006). Defendant bases the instant Petition on the argument that he was never properly served with the Complaint. Despite Plaintiff's arguments to the contrary, upon review of the Sheriff's Return of Service, we must agree. The Return of Service states that the Complaint was "served" on "Jane Doe" (PIC); however, it further notes: "Drop service on white female. She opened the front door but refused to accept paperwork. Paperwork left in front door." Plaintiff further argues that the instant Petition is untimely. However, a judgment which is void ab initio must be stricken without regard to the passage of time. Oswald v. WB Public Square Associates, LLC, 80 A.3d 790 (Pa.

C:\Program Files (x86)\neevia.com\docConverterPro\temp\NVDC\AE63B6BA-D98F-46BC-BFD2-8283CFA1EF13\c314da45-969f-325b-a41e-149a2afe06dd.docx

Super. 2013).   Finally, Plaintiff argues that Defendant has failed to state a meritorious defense; however, that is a requirement for opening a default judgment.



**Type:**              ORDER - OPEN/STRIKE JUDGMENT

**Case Number:**       2018-12030-CT

**Case Title:**        KALMBACH, R. KERRY VS. CURTISS, DAVID F

So Ordered

/s/ Mark Tunnell

Electronically signed on 2020-12-28 08:30:34    page 3 of 3

*2018-12030-CT*

SMITH KANE HOLMAN, LLC
By: David B. Smith, Esquire
Attorney ID # 59098
Michael P. Donohue, Esquire
Attorney ID #200371
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7215 Phone
(610) 407-7218 Fax

*Attorneys for Defendant*
*David F. Curtiss*

*Filed and Attested by
PROTHONOTARY
04 Nov 2020 11:27 AM
S. Beery*

| | |
|---|---|
| R. Kerry Kalmbach : | COURT OF COMMON PLEAS OF |
| : | CHESTER COUNTY, PENNSYLVANIA |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | No. 2018-12030-CT |
| David  F. Curtiss : | |
| : | |
| Defendant. : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID F. CURTISS'S VERIFIED PETITION TO STRIKE DEFAULT JUDGMENT

Petitioner, Defendant David F. Curtiss, by and through his undersigned attorneys, hereby

files this memorandum of law in support of his Petition to strike the default judgment entered in

this matter on January 31, 2019.

### I.    INTRODUCTION

Plaintiff R. Kerry Kalmbach ("Kalmbach") is a practicing attorney licensed to practice

law in Pennsylvania and who maintains an office at 109 West Lindon Street, Kennett Square,

Pennsylvania. Defendant David F. Curtiss ("Curtiss") is an individual and former client of

Kalmbach.

On November 19, 2018, Kalmbach initiated this action by filing a Complaint. *See*

Exhibit "B" to Petition, Docket at 11/19/2018.  Kalmbach filed the Complaint asserting an

alleged failure by Curtiss to pay fees to Kalmbach primarily for services provided to Kimberly

Thomas, a third party who was not named as a defendant in this action.

On or about December 5, 2018, a document entitled "Sheriff Service" "Process Receipt

and Affidavit of Return (hereinafter "Sheriff's Return of Service") was filed with the Court

purporting to evidence service of Kalmbach's Complaint upon Curtiss. *See* Sheriff's Return of

Service at Exhibit "A" to Petition; *see also* Exhibit "B," Docket at 12/5/2018. The Sheriff's

Return of Service purports to evidence service of the Complaint upon Curtiss by use of a self-

described and self-styled "drop service" at 31 Main Line Road, Coatesville, Pennsylvania 19320

(the "Service Address"). *See* Exhibit "A" to Petition at line 5, 6 and 30; Exhibit "C" to Petition

at 12/5/2018.

However, about the only information that can be gleaned from the Sheriff's Return of

Service that was filed with the Court is that the Complaint was merely dropped "in the front

door" after an unidentified "White Female," described as "Jane Doe," "opened the front door but

refused to accept paperwork." *See id.* Thus, the record clearly supports that the Complaint was

not handed to any person at any time, as specifically required by Pa.R.C.P. 402, but was instead

simply dropped and/or thrown in the doorway of the Service Address. *See id.*; *see also* Pa.R.C.P.

402(a)(1)-(2).

The record in this matter further supports that Curtiss himself was never personally

served with Kalmbach's Complaint as the Sheriff's Return of Service specifically notes that the

Sheriff only encountered a "White Female." *See* Exhibit "A" to Petition at line 30 ("Drop

service on White Female. She opened the front door but refused to accept paperwork."); *see also*

Exhibit "B" to Petition at 12/5/2018. Indeed, it appears that Kalmbach specifically sought to

avoid serving Curtiss personally as Kalmbach's request for service sought service only upon a

2

"person in charge." *See* Exhibit "A" at line 7 (wherein Kalmbach checked off service only upon a "person in charge.")

Notwithstanding the above, and although the Sheriff's Return of Service asserts that a "Person in Charge" was purportedly served, the Sheriff's Return of Service does not facially support that the unidentified "White Female" "Jane Doe" was "an adult person in charge of such residence." *See* Exhibit "B"; Pa. R.C.P. 402(a)(2)(i)(providing that if an adult member of the family with whom a defendant resides is not found at the residence of the defendant, original process may be served by handing a copy "to an adult in charge of such residence.") Indeed, the Sheriff's Return of Service is devoid of any predicate information necessary to establish such status for the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork." *See* Exhibit "B"; Pa. R.C.P. 405(b)("A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.")

Furthermore, and to be complete, the Sheriff's return of Service does not facially support that the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork" was an adult member of Curtiss's family with whom Curtiss resided. *See* Exhibit "A"; Pa. R.C.P. 402(a)(2)(i).  Again, the Sheriff's Return of Service is devoid of any predicate information necessary to establish such status for the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork." *See id.*

Finally, there is no provision under Pennsylvania law for "drop service" of original process, and the record herein supports that no order permitting the so-called "drop service" was ever issued. *See* Pa. R.C.P. 400 *et seq.*; *see also* Exhibit "B."

3

Thus, the record in this matter supports that the purported service of the Complaint upon Curtiss, as well as the Sheriff's Return of Service filed in this matter, did not comply with the Pennsylvania Rules of Civil Procedure regarding service of original process, including and not limited to Rules 400, 402 and 405, and the Sheriff's Return of Service does not contain facts that facially support proper service of Kalmbach's Complaint upon Curtiss in this matter. *See* Exhibit "A"; Exhibit "B"; Pa. R.C.P. 400, Pa. R.C.P. 402; Pa. R.C.P. 405.

On January 31, 2019, while Curtiss was battling cancer (as he still is to this day), Kalmbach obtained a judgment by default against Curtiss, in the amount of $113,814.80, (the "Judgment"). *See* Exhibit "B" to Petition, Docket at 1/31/19. Because the record before this Court does not support valid service of Kalmbach's Complaint upon Curtiss personally, or upon a member of Curtiss' family residing with him, or upon an adult in charge of Curtiss' residence, Petitioner David C. Curtiss seeks an order striking the default judgment entered on January 31, 2019.

**QUESTION BEFORE THE COURT**

QUESTION:   Whether there exists a defect of record that would warrant this Court striking the January 31, 2019 judgment by default entered in this matter.

ANSWER:   Yes. The record herein does not support that valid service was made upon Defendant David F. Curtiss and because valid service was not made upon David Curtis, the default judgment entered on January 31, 2019 was void *ab initio* and should be stricken.

## II.    **LEGAL ARGUMENT**

This Court should grant Curtiss's Petition and strike the default judgment entered in this matter on January 31, 2019 because the record in this matter does not support valid service of original process upon Defendant David F. Curtiss.

### *Legal Standard for a Petition to Strike*

"A petition to strike a judgment operates as a demurrer to the record and must be granted whenever some fatal defect appears on the face of the record." *First Union Nat. Bank v. Portside Refrigerated Servs., Inc.* 827 A.2d 1224, 1227 (Pa. Super. 2003)(quoting *PNC Bank v. Bolus*, 655 A.2d 997, 999 (Pa. Super. 1995)). "When deciding if there are fatal defects on the face of the record for purposes of a petition to strike a judgment, a court may only look at what was in the record when the judgment was entered." *Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 917 (Pa. 1997). Thus, "a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief." *City of Philadelphia v. David J. Lane Advertising*, 33 A.3d 674, 677 (Pa. Comwlth. 2011)(citing *First Union Nat'l Bank*, 827 A. 2d at 1127). Importantly, "[a] petition to strike does not involve the discretion of the trial court." *Cintas Corp.*, 700 A.2d at 919 (citing *Dubrey v. Izaguirre*, 685 A.2d 1391, 1393 (Pa. Super. 1996)).

### *Default Judgments*

With respect to default judgments, it has long been the case that default judgments are not favored by our courts. *See Kennedy v. Black*, 424 A.2d 1250, 1252 (Pa. 1981). Indeed, our courts have stated in regard to default judgments that:

> [t]he purpose of the rules in authorizing the entry of default judgments is to prevent a dilatory defendant from impeding the plaintiff in establishing his claim. The rules are not primarily intended to provide the plaintiff with a means of gaining a judgment without the difficulties which arise from litigation....

*2018-12030-CT*

*Tronzo v. Equitable Gas Co.,* 410 A.2d 313, 315 (Pa. Super.1979)(quoting *Moyer v. Americana*

*Mobile Homes, Inc.,* 368 A.2d 802, 804 (Pa. Super.1976)). Thus, it has long been the case that

"in such a sensitive area as the taking of judgment by default, substantial compliance with [the

applicable rules of civil procedure] is required. *See Gangi v. Delco Cab. Co.*, 411 A.2d 798, 800

(Pa. Super. 1979).

### *Service of Original Process and Jurisdiction of the Court*

Service of process is the mechanism by which a court obtains jurisdiction over a

defendant. *Sharp v. Valley Forge Medical Center and Heart Hospital, Inc.* 221 A.2d 185, 187

(Pa. 1966). Thus, "rules relating to service of process must be strictly followed." *McCreesh v.*

*City of Phila.*, 888 A.2d 664, 666 n.1 (Pa. 2005) (quoting *Sharp v. Valley Forge Med. Ctr. &*

*Heart Hosp., Inc.*, 221 A.2d 185, 187 (Pa. 1966)).

Under Rule 400 of the Pennsylvania Rules of Civil Procedure, service of original process

is generally made within the Commonwealth of Pennsylvania by the sheriff. *See* Pa.R.C.P.

400(a).  Rule 402 of the Pennsylvania Rules of Civil Procedure provides that: (a) Original

process may be served:

> (1) by handing a copy to the defendant; or
>
> (2) by handing a copy
>
>> (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
>>
>> (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or
>>
>> (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa.R.C.P. 402(a)(i)-(iii).

Proper service is not presumed, rather, the return of service itself must demonstrate that the service was made in conformity with the Pennsylvania Rules of Civil Procedure. *Neff v. Tribune Printing Co.*, 218 A.2d 756, 757-58 (Pa. 1966). Pa. R.C.P. 405(b) requires that the return of service set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made. *See* Pa.R.C.P. 405(b); *Neff v. Tribune Printing Co.*, 218 A.2d at 757-58 ("Pennsylvania Rules of Civil Procedure requires that the return of service shall set forth the day, hour and place of service, the name of the person to whom a copy of the writ or complaint was handed and any other facts necessary for service.")

In the absence of proper service, a court lacks personal jurisdiction over the party and is powerless to enter judgment against that party. *U.K. LaSalle, Inc. v. Lawless*, 618 A.2d 447, 449 (Pa.Super. 1992)("If there is no valid service of initial process, a subsequent judgment by default must be deemed defective. In the absence of valid service, a court lacks personal jurisdiction over a party and is powerless to enter judgment against him.") Thus, a lack of jurisdiction by the court over the parties is a defect sufficient to justify granting a petition to strike. *See Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 28 (Pa. Super 2015). Furthermore, "void judgment[s] may be attacked at any time." *Graham v. Kutler*, 418 A.2d 676, 677 (Pa. Super. 1980); *see also Northern Forests,* 130 A. 3d at 34-35 (Pa. Super. 2015)(striking a void judgment twenty-four years after entry.)

Here, this Court did not have jurisdiction over Curtiss in that the record does not support proper legal service of Kalmbach's Complaint upon Curtiss. Thus, the default judgment entered against Curtiss was void *ab initio* and should therefore be stricken.

7

**A. The Default Judgment Entered Against Curtiss In This Matter Should Be Stricken Because The Sheriff's Return Of Service Filed In This Matter Does Not Facially Support That The Complaint Was Properly Served Upon Curtiss.**

The record in this matter supports that service of original process, here Kalmbach's Complaint, was not made upon Curtiss, or any other person permitted under the rules to accept service, and such failure and defective service is a basis to strike the default judgment entered in this matter.

As above, the Docket in this matter provides that Kalmbach filed his Complaint on November 19, 2018. *See* Exhibit "B" to Petition, Docket at 11/19/2018. The Chester County Sheriff filed a Sheriff's Return of Service on December 5, 2018 purporting to evidence service of the Complaint upon a "person in charge." *See* Exhibit "A" to Petition at lines 5, 6, 7 and 30; Exhibit "B" to Petition, Docket at 12/5/2018.

From the meager information that can be gleaned from the Sheriff's Return of Service that was filed with the Court, the Sheriff merely "dropped" the Complaint "in the front door," of 31 Main Line Road, Coatesville, Pennsylvania 19320 after an unknown and unidentified "White Female," described as "Jane Doe," with an unknown and unidentified title, and of an unknown and unidentified relationship to Curtiss, "opened the front door but refused to accept paperwork." *See id.* Thus, the Sheriff's Return of Service purports to have effected service of the Complaint upon Curtiss by use of a self-styled "drop service" on an unknown and unidentified "White Female," of an unknown and unidentified relationship to Curtiss, with an unknown and unidentified title. However, the Sheriff's Return of Service does not evidence valid service of Kalmbach's Complaint upon Curtiss.

8

As an initial matter, the record clearly supports that the Complaint was not handed to any person at any time as specifically required by Rule 402, but was instead simply thrown in the doorway of 31 Main Line Road, Coatesville, PA 19320  *See* Exhibit "A" to Petition at line 5, 6 and 30; Exhibit "B" to Petition, Docket at 12/5/2018; *see also* Pa.R.C.P. 402(a)(1)-(2).

Furthermore, the Sheriff's Return of Service does not claim or evidence that service was made on Curtiss personally. *See* Exhibit "A" to Petition at line 5, 6 and 30; Exhibit "B" to Petition, Docket at 12/5/2018; *see also* Pa.R.C.P. 402(a)(1).  Notably, it appears that Kalmbach specifically sought to avoid serving Curtiss personally as Kalmbach's request for service sought service only upon a "person in charge." *See* Exhibit "A" to Petition at line 7 (wherein Kalmbach checked off service only upon a "person in charge.")  Notwithstanding, the Sheriff's Return of Service is quite clear that the Sheriff did not at any time encounter a male in his attempts to effect service, but only interacted with an unidentified "White Female" in the Sheriff's purported attempt at making service. *See id.* at line 30.  Thus, the record herein supports that Curtiss himself was never personally served.

The Sheriff's Return of Service does not facially support that an adult in charge of Curtiss' residence was served.   Although the Sheriff's Return of Service asserts that a "Person in Charge" was served, the Sheriff's Return of Service does not facially support that the unidentified "White Female" "Jane Doe" was actually served, or even if she was, whether the unidentified "White Female" "Jane Doe" was "an adult person in charge of such residence." *See* Exhibit "A" at line 7 and 30; Pa. R.C.P. 402(a)(2)(i) (providing that if an adult member of the family with whom a defendant resides is not found at the residence of the defendant, original process may be served by handing a copy "to an adult in charge of such residence.")

9

Indeed, the Sheriff's Return of Service neither identifies the "White Female," other than to describe her as a "Jane Doe," nor states any facts or personal knowledge of the Sheriff supporting that such unidentified "White Female" was a person in charge of Curtiss' residence. *See id.* The Sheriff's Return of Service is simply devoid of any predicate information necessary to establish such status for the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork." *See* Exhibit "A"; Pa. R.C.P. 405(b)("A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.")

Furthermore, and to be complete, the Sheriff's return of Service does not facially support that the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork" was an adult member of Curtiss' family with whom Curtiss resided. *See* Exhibit "A"; Pa. R.C.P. 402(a)(2)(i).  Again, the Sheriff's Return of Service is devoid of any predicate information necessary to establish such status for the unidentified "White Female" "Jane Doe" who "opened the front door but refused to accept" the "paperwork." *See id.*

Indeed, the Return of Service explicitly acknowledges that the Complaint was simply dropped by the Sheriff in the "in the front door," of 31 Main Line Road, Coatesville, PA 19320. *See* Exhibit "A" to Petition at lines 18 and 30; Exhibit "B" to Petition, Docket at 12/5/2018.  To the extent any person is identified in the Sheriff's Return of service, an unknown and unidentified "White Female," described as "Jane Doe," is identified. *See id.*  No further information is provided in the Sheriff's Return of Service as to the unknown and unidentified "White Female" "Jane Doe," with an unknown and unidentified title, and of an unknown and unidentified relationship to Curtiss, who "opened the front door but refused to accept

10

paperwork." *See id.* Thus, the Sheriff's Return of Service does not facially support that an adult

member of Curtiss's family, with whom Curtiss resided, was served.

Finally, there is no provision under Pennsylvania law for "drop service" of original

process, and the record herein supports that no order permitting the so-called "drop service" was

ever issued. *See* Pa. R.C.P. 400 *et seq.*; *see also* Exhibit "B."

By any measure, the Sheriff's Return of Service at issue herein, and by extension the

record in this matter, does not support valid proper service of Kalmbach's Complaint upon

Curtiss personally, or on any other person otherwise, in conformance with the Pennsylvania

Rules of Civil Procedure or other applicable law.  Kalmbach's failure to comply with the

Pennsylvania Rules of Civil Procedure, including Rules 400, 402 and 405(a), renders the

purported service on Curtiss facially and fatally defective as a matter of law.

Because the record herein supports that service of Kalmbach's Complaint on Curtiss was

facially and fatally defective as a matter of law, the Court did not have personal jurisdiction over

Curtiss, and the default judgment entered in this matter in favor of Kalmbach is void *ab initio*.

Therefore, the Court should grant Curtiss's Petition and issue an order striking the default

judgment entered in this matter on January 31, 2019.

*2018-12030-CT*

## III.    CONCLUSION

When all of the above is taken in totality, this Honorable Court should grant Defendant David F. Curtiss's Verified Petition to Strike Default Judgment, strike the default judgment entered in this matter on January 31, 2019, and grant other and further relief as is deemed just and proper under the circumstances.

Respectfully submitted,

SMITH KANE HOLMAN, LLC

Dated: 11/2/2020

By /s/ _____
David B. Smith, Esquire
Michael P. Donohue, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
(610) 407-7215 Phone
(610) 407-7218 Fax
*Attorneys for Defendant/Petitioner
David F. Curtiss*

12

*2018-12030-CT*